# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID HEED, Derivatively and on Behalf of UNIVERSAL HEALTH SERVICES, INC.,**<br>　　　**Plaintiff**<br><br>　vs.<br><br>**ALAN B. MILLER, et al.**<br>　　　**Defendants**<br>　and<br><br>**UNIVERSAL HEALTH SVCS, INC.,**<br>　　　**Nominal Defendant** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br><br><br><br><br>**NO. 17-1476** |
| **CENTRAL LABORER'S PENSION FUND, Derivatively on Behalf of UNIVERSAL HEALTH SVCS, INC.,**<br>　　　**Plaintiff**<br><br>　vs.<br><br>**ALAN B. MILLER, et al.,**<br>　　　**Defendants**<br>　and<br><br>**UNIVERSAL HEALTH SVCS, INC.,**<br>　　　**Nominal Defendant** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br>**NO. 17-2187** |
| **WATERFORD TOWNSHIP POLICE & FIRE RETIREMENT SYSTEM, Derivatively on Behalf of UNIVERSAL HEALTH SVCS, INC.,**<br>　　　**Plaintiff**<br><br>　vs.<br><br>**ALAN B. MILLER, et al.,**<br>　　　**Defendants**<br>　and<br><br>**UNIVERSAL HEALTH SVCS, INC.,**<br>　　　**Nominal Defendant** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br>**NO. 17-2595** |

| | | |
|---|---|---|
| AMALGAMATED BANK LONGVIEW FUNDS, Derivatively on Behalf of UNIVERSAL HEALTH SERVICES, INC.,     Plaintiff | : : : : : : | CIVIL ACTION |
| vs. | : : | NO. 17-3404 |
| CHARLES F. BOYLE, et al.,     Defendants   and | : : : : | |
| UNIVERSAL HEALTH SVCS, INC.,     Nominal Defendant | : : | |

# M E M O R A N D U M

**STENGEL, C. J.**                                                        March 29, 2018

      These four derivative actions arise out of an alleged scheme of the defendants to cause Nominal Defendant Universal Health Services ("Universal") to over-admit patients and then keep them admitted for financial rather than medical reasons in order to over-bill Medicare and Medicaid for unwarranted "services." Universal is a Delaware corporation headquartered in Pennsylvania which owns and operates hospitals and other medical facilities across the United States and in the United Kingdom. Among them are more than 230 behavioral health facilities through which Universal and its affiliates provide psychiatric and behavioral health care to more than 460,000 individuals per year. The individual defendants are Universal's directors and senior officers.

      The four complaints allege that the defendants caused Universal to violate the False Claims Act and file false financial reports with the Securities and Exchange Commission, thus artificially inflating the price of Universal common stock by concealing the illicit source of a growing portion of Universal's reported revenues. The

plaintiffs in two of these actions have filed a motion to consolidate pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, and to appoint lead plaintiff and lead counsel. For the following reasons, I will grant the motions to consolidate, and appoint Amalgamated Bank LongView Funds as lead plaintiff, and the law firm of Scott & Scott as lead counsel. I will also appoint the Axelrod Firm as liaison counsel for the consolidated action.

**I. MOTIONS TO CONSOLIDATE**

The two motions before me seek the consolidation of four related shareholder derivative actions, i.e., Heed v. Miller, 17-cv-01476; Central Laborers' Pension Fund v. Miller, 17-cv-02187; Waterford Township Police & Fire Ret. Sys. v. Miller, 17-cv-02595; and Amalgamated Bank LongView Funds v. Boyle, 17-cv-3404. Each of these actions allege breaches of fiduciary duties owed to Universal by substantially the same defendants.

Under Rule 42(a) of the Federal Rules of Civil Procedure:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the action; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED.R.CIV.P. 42(a). The power to consolidate related actions falls within the inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); In re Sterling Fin. Corp. Sec. Class Action, No. 07-1879,

3

2007 U.S. Dist. LEXIS 93708, at *7 (E.D. Pa. 2007) ("Rule 42(a) grants the court broad discretion to consolidate actions in order to 'facilitate the administration of justice.'") Consolidation of substantially identical shareholder derivative actions can help alleviate needless duplication of time, effort, and expense on the part of the parties and the court. In re TMI Litig., 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to 'streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'") When consolidation is appropriate, the court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits. Horn v. Raines, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions).

Here, in each of these actions, the plaintiffs assert, *inter alia*, breach of fiduciary duty claims arising out of the defendants': (1) illicit over-admittance of patients to its inpatient mental health facilities; (2) improper billing to government agencies in violation of the False Claims Act; (3) issuance of false and misleading financials to the U.S. Securities and Exchange Commission; (4) repurchase of tens of millions of dollars of Universal stock while it traded at artificially inflated prices; and (5) sale of millions of dollars of their own personally held Universal shares to the unsuspecting public, reaping tens of millions of dollars in illicit gains. Each of these actions arises from a common nucleus of operative facts and involves virtually identical questions of law. The nearly identical questions of law and fact that predominate support consolidating the four shareholder derivative actions for all purposes under Rule 42(a). See A.S. v. SmithKline

Beecham Corp., 769 F.3d 204, 212 (3d Cir. 2014) ("district courts have 'broad power' to consolidate cases that share 'common question[s] of law or fact'").

Further, each of these actions allege claims for breach of loyalty and other violations of federal and state law against Universal's directors and top officers and arise out of the same allegedly unlawful scheme employed by the defendants to improperly admit patients to Universal psychiatric facilities, often involuntarily, without a proper basis to do so, to obtain unjustified reimbursement from Federal and State Medicare and Medicaid programs.

Accordingly, because I find that the interests of all parties and the court are best served by the efficiency, consistency, and economy achieved through the requested consolidation, I will grant the motions to consolidate these four actions, as well as any subsequently filed similar actions.

## II. MOTIONS TO APPOINT LEAD PLAINTIFF

When appointing a lead plaintiff, I must ensure that the plaintiff "fairly and adequately represents the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation." FED.R.CIV.P. 23.1. Although no statutory authority exists for the appointment of a lead plaintiff in shareholder derivative actions, courts have the inherent "authority to appoint a lead plaintiff . . . in a derivative action in order to create an efficient case-management structure." KBC Asset Mgmt. NV v. McNamara, 78 F.Supp.3d 599, 604 (D. Del. 2015). Factors courts have considered in analyzing a plaintiff's fitness to be lead plaintiff include: (i) quality of pleadings; (ii) size of financial stake; (iii) preference for institutional plaintiffs; (iv) vigorousness of

5

prosecution; and (v) attorney's fees. Id. The appointment of a lead plaintiff will allow for Universal's shareholders to speak with one voice and advance the claims of Universal in the most efficient way possible.

Here, Amalgamated and Central Laborers' Pension Fund both seek to be appointed lead plaintiff. This is a difficult choice to make because it appears that both of these plaintiffs would be more than fair and adequate in representing the interests of the shareholders in this consolidated action. Nevertheless, based on the factors to be considered, I will appoint Amalgamated as lead plaintiff.

Central Laborers argues that it would be in the best position to represent the shareholders here because it is an institutional shareholder experienced at prosecuting complex shareholder derivative litigation. In conjunction with its counsel, Central Laborers has successfully resolved a number of these actions. See In re Dole Food Co., Inc. Shareholder Litig., No. 8703-VCL, Stipulation and Agreement of Settlement (Del. Ch. 2015), Order and Final Judgment (Del. Ch. 2016) ($115 million trial court verdict for breach of fiduciary duty); Policemen and Firemen Ret. Sys. of the City of Detroit v. Cornelison, No. 2009-29987, Stipulation of Settlement (Tex. – Harris Cty. 2012) (implementing substantial corporate governance reforms and internal control revisions for the benefit of the company); Beach v. Healthways Inc., No. 08-cv-00569, Notice of Pendency and Proposed Settlement of Class Action (M.D. Tenn. 2010) ($23.6 million recovery for class); Central Laborers' Pension Fund v. Chellgren, Inc. et al., No. 02-CI-02174, Stipulation of Settlement (Ken. Cir. Ct. 2005), Order and Final Judgment (Ken.

Cir. Ct. 2005) (implementing substantial corporate governance reforms for the benefit of the company).

Central Laborers initiated this derivative action on behalf of Universal on May 12, 2017. Its complaint spans sixty pages and 120 paragraphs, and alleges nine counts for violations of federal and state law. The complaint details numerous red flags that put the Board on notice of Universal's unlawful admissions practices and Universal's defective internal controls, including:

1. Multiple, intensifying government investigations into Universal's behavioral health services and violations of the False Claims Act dating back to at least 2011;

2. A March 2014 letter from Service Employees International Union ("SEIU") to the Board detailing how Universal's use of certain codes, including the suicidal ideation code, were significantly higher than in other inpatient psychiatric facilities, and that there was a very sharp increase in several facilities' use of such codes after the facilities' 2010 acquisition by Universal;

3. PEPPER[1] reports revealing that a substantial portion of Universal facilities were above the 80th percentile for suicidal ideation diagnoses as compared to other inpatient psychiatric facilities; and

4. A "Change to Win"[2] letter in April 2014, identifying serious deficiencies in Universal's internal controls and imploring the Board to improve its oversight over regulatory compliance.

---

[1] PEPPER stands for Program for Evaluating Payment Patterns Electronic Report. It is a comparative data report that summarizes one provider's Medicare claims data statistics for services vulnerable to improper Medicare payments.

7

Central Laborers further argues that its complaint also details how the defendants, instead of swiftly acting to halt Universal's unlawful admissions practices, breached of their fiduciary duties by continuing the improper admissions practices and causing Universal to issue false and misleading financial reports to shareholders.

Central Laborers also argues that it has significant holdings of Universal stock, and has owned the stock continuously since January 2008. It indicates that, as of August 2017, it owns 1,384 shares of Universal stock, and therefore has a significant financial interest in Universal and the outcome of these derivative claims. Thus, Central Laborers argues that it is well-suited to serve in a fiduciary capacity, and that it will actively prosecute this litigation to protect the interests of Universal.

On the other hand, Amalgamated argues that it would be the better lead plaintiff because it used the tools at hand and conducted a diligent books and records examination pursuant to Section 220[3] prior to filing its derivative complaint to obtain documents supportive of its demand futility argument. Specifically, it obtained and analyzed 519 pages of internal company documents, including Board minutes and the minutes of the Board's subcommittees, packages, and presentations reviewed by the Board members in

---

[2] Change To Win is a democratic federation of labor unions representing more than 5.5 million working men and women.

[3] Title 8 of the Delaware Code, Section 220 allows for the inspection of a corporations books and records by any stockholder. It provides: "Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from: (1) the corporation's stock ledger, a list of its stockholders, and its other books and records; and (2) a subsidiary's books and records, to the extent that: (a) the corporation has actual possession and control of such records of such subsidiary; or (b) the corporation could obtain such records through the exercise of control over such subsidiary."

preparation for those meetings, and internal compliance policies and corporate governance manuals.  Amalgamated insists that its thorough search and examination allowed it to file the most comprehensive demand futility complaint of the four derivative actions.

Amalgamated further argues that the other three complaints were based only on publicly available information.  Despite the need to allege "particularized allegations" of director knowledge or conscious disregard of Universal's unlawful conduct to overcome the pleading requirements in demand futility derivative actions, none of these three plaintiffs conducted a pre-suit books and records investigation.

Amalgamated also pleads, based on its investigation and review of the Section 220 documents, that the Board received numerous shareholder letters alerting it to Universal's illegal conduct and demanding change.  Moreover, as alleged in Amalgamated's complaint, the Section 220 documents confirmed that the Board reviewed compliance and control concerns, quality of care issues, and legal proceedings occurring at dozens of Universal's facilities during the relevant period.  When combined with the publicly known facts concerning Universal's alleged egregious conduct, this documentary trail is important evidence establishing that the Board was repeatedly made aware of red flags that Universal was engaged in illegal conduct, yet consciously failed to act to address these problems.  Thus, Amalgamated argues that because its Section 220 investigation meaningfully enhanced its derivative claims by uncovering a significant amount of documentary evidence that Universal's Board consciously disregarded the wrongdoing at

9

Universal, it would be in the best position to fairly and adequately represent the shareholders in this consolidated action. I agree.

Of all of the derivative plaintiffs, only Amalgamated investigated the alleged wrongdoing at issue by reviewing confidential corporate records from Universal pursuant to a Section 220 books and records inspection. Amalgamated sent a Section 220 demand for inspection of books and records to Universal on June 15, 2017. The documents it obtained will be a significant advantage in helping plaintiffs in the consolidated case satisfy the "demand futility" pleading standard.

Amalgamated also argues that, in holding approximately 18,800 shares of Universal stock, its interest is sufficiently substantial to grant it a significant interest in the outcome of this litigation. Again, I must agree.

In conclusion, many of the factors I considered in choosing the lead plaintiff are neutral. A few of the factors, however, point to Amalgamated as the leader of the plaintiffs. Because Amalgamated undertook a books and records inspection to strengthen their derivative allegations, its quality of pleadings surpasses that of the other plaintiffs. The vigorousness of prosecution factor also supports Amalgamated as the lead because Amalgamated alone took the initiative to utilize Section 220 to gain access to important, non-public documents, and craft a superior complaint. Finally, because the size of Amalgamated's financial stake in this litigation greatly outweighs that of Central Laborers, I am convinced that Amalgamated is in the best position to "fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation." See FED.R.CIV.P. 23.1.

## II. MOTIONS TO APPOINT LEAD COUNSEL

Central Laborers requests that its counsel, Robbins Geller, be appointed as lead counsel for the plaintiffs in the consolidated action. It argues that Robbins Geller is a national law firm with nearly 200 lawyers, and possesses extensive experience litigating complex shareholder actions. The firm has been appointed as lead counsel in several landmark shareholder actions and has successfully prosecuted numerous derivative actions on behalf of injured companies. As lead counsel, Robbins Geller would bring to this litigation a seasoned litigation team consisting of attorneys, investigators, and forensic accountants who would devote substantial resources to the prosecution of this action on behalf of Universal. Over the last few years alone, Robbins Geller attorneys, while serving as lead counsel, have secured billions in recoveries for shareholders in representative actions alleging corporate malfeasance. With no question, Robbins Geller would make an excellent choice for lead counsel.

On the other hand, Amalgamated correctly argues that absent extraordinary circumstances, a lead plaintiff should be able to select its own counsel. Thus, it argues that I should appoint its selection of Scott & Scott as lead counsel and the Axelrod Firm as liaison counsel. I agree. In a declaration, Attorney Jonathan M. Zimmerman of the law firm of Scott & Scott provided information on his firm which shows that Scott & Scott possesses ample experience in litigating complex shareholder derivative actions. It also has demonstrated a high level of professionalism in securing a number of significant recoveries in the recent past. In his declaration, Attorney Zimmerman also indicates that the Axelrod Firm is a well-respected, Philadelphia-based law firm with significant

experience trying cases in federal district courts, including the Eastern District of Pennsylvania.  Therefore, I will appoint the law firm of Scott & Scott as lead counsel for the plaintiffs in the consolidated action, and the Axelrod Firm as liaison counsel.

    An appropriate Order follows.